IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| CONDADO 2 CLF, LLC, Plaintiff, v. FERNANDO ECHEGARAY DALECCIO, et. al., Defendants. | CIVIL NO. 16-1505 (CVR) |
|---|---|

**OPINION AND ORDER**

This case presents a complex web of loans, mortgages, notes and accessory documents that resulted in Plaintiff Condado 2 CLF, LLC's ("Plaintiff" or "Condado 2") attempt to foreclose on a mortgage and promissory note it currently holds. Defendants are Fernando Juan Echegaray Daleccio ("Echagaray"), Ana María Romero Romero ("Romero") and their Conjugal Partnership, Productos Avícolas Del Sur, Inc., Productos Avícolas Del Caribe, Inc., and Plaza Santa Isabel, Inc. (collectively, "Defendants").

The facts of this case are long and convoluted, but the Court outlines the most salient ones for purposes of the issue before it. FirstBank Puerto Rico ("FirstBank" or "the bank") held three (3) separate loans with some of the Defendants herein, which were all cross collateralized by the same parcel of land. These three (3) loans were subsequently extended and/or modified at different times and under different circumstances, but were ultimately not paid according to their corresponding terms. As such, FirstBank entered into certain arrangements with the parties to those loans, which resulted in two (2) different outcomes.

First, the bank executed a "General Release and Indemnity Agreement" and "Consent Judgment" in Puerto Rico state court, under which FirstBank would foreclose upon the real estate collateral for the three (3) loans, which as previously stated was the same parcel of land, proceeded to release the participants of any deficiency and released certain personal and corporate guarantees. This first agreement applied to two (2) of the three (3) loans, to wit, Nos. 600372 and 600424.

Second, the parties also executed certain documents to release them from the third loan, which Defendants label the "PAC loan", No. 4201872, and the one at issue here. FirstBank and Echegaray, Romero, Productos Avícolas Del Sur, Inc., and Productos Avícolas Del Caribe, Inc., executed a "General Release and Indemnity Agreement" to release them from the PAC loan obligations. Since the collateral for this loan was the same parcel of land as for the previous two loans, which in turn had been foreclosed upon by the bank as a result of the first agreement, Defendants offered up a new parcel of land to guarantee this second transaction. This parcel of land was owned by co-Defendant Plaza Santa Isabel.

A Term Promissory Note for $1,000,000.00, a Mortgage Note for $1,000,000.00, a Mortgage Deed for the new property and a Pledge and Security Agreement were then drawn up, and its signatories were FirstBank, Echegaray, Romero, and co-Defendant Plaza Santa Isabel, as owner of the new collateral. Productos Avícolas Del Sur, Inc., and Productos Avícolas Del Caribe, Inc., which had been signatories to the General Release of the PAC loan, were not signatories to these documents. As a result thereof, Echegaray and Romero agreed to pay FirstBank the sum of $1,000,000.00,[1] plus interest at the

---

[1] The original amount due under the PAC loan was $1,500,000.00.

annual rate of 6%, payable in eighty-three (83) consecutive monthly installments of $6,444.00 and a balloon payment for the amount due upon maturity. The release from the original obligations of the PAC loan was contingent upon compliance with this agreement. [2]

Puerto Rico Triangle Limited Liability Company ("PR Triangle") then acquired from FirstBank both of the above-referenced relationships, who in turn, assigned them to Plaintiff herein Condado 2. This litigation ensued after Defendants defaulted on the payment of the aforementioned plan.

Before the Court now is Defendants' "Motion to Extinguish The Litigated Credit Pursuant to Article 1425 of the Puerto Rico Civil Code" (Docket No. 74) and Plaintiff's opposition thereto (Docket No. 83). Defendants' argument is two-fold.

First, Defendant aver that the $1,000,000.00 Term Promissory Note and the Mortgage Note held by Plaintiff as of the filing date of the Complaint were documents issued as a payment plan for the PAC loan. Because FirstBank's release of the obligations and guarantees issued under the PAC loan was contingent upon compliance with the new payment plan, Defendants argue that the $1,000,000.00.00 Promissory and Mortgage Notes held by Plaintiff were "accessory obligations that could not exist independent of the principal obligation [they] guarantee", the PAC loan. (Docket No. 74, at p. 2).

Second, and as a direct consequence of this situation, because Plaintiff had not yet acquired the rights to the PAC loan on the filing date of the Complaint, Defendants assert that Plaintiff did not have the right to collect the accessory obligations under the PAC

---

[2] One of the pivotal issues presented in this case is precisely what this new arrangement was - whether it was a payment plan for the repayment of the original PAC loan, and thus, an accessory to the PAC loan as argued by Defendants, or whether it was a new agreement altogether as argued by Plaintiff. The Court does not reach this issue today and uses the term "agreement" loosely, without any legal or formal connotation.

loan. Upon realizing this, Defendants aver that Condado 2 secretly negotiated with FirstBank to acquire the PAC loan during the course of the discovery of this case, and failed to notify the acquisition of the PAC loan to the Court, to the loan borrower, the loan guarantors or to Defendants. It was not until Plaintiff's 30(b)(6) deposition on December 7, 2017, that the corporate representative for Condado 2 "acknowledged" that it had acquired the PAC loan in March, 2017, which was over a year after filing of the Complaint.

Thus, Defendants' position is that Condado 2's acquisition of the PAC loan during the course of this litigation activated their right to extinguish the litigated credit pursuant to Article 1425 of the Puerto Rico Civil Code.

Article 1425 states the following: "When a litigated credit is sold, the debtor shall have the right to extinguish the same by reimbursing the assignee for the price the later paid for it, the judicial costs incurred by him, and the interest on the price from the day on which the same was paid. A credit shall be considered as litigated from the day the suit relating to the same has been answered. The debtor may make use of his right within nine (9) days, counted from the day the assignee should demand payment of him". P.R. Laws Ann. tit. 31, § 3950.

On December 14, 2017, Defendants sent notice to Condado 2 of their intent to extinguish the litigated credit. (Docket No. 61).

In Plaintiff's Opposition, it argues that the PAC loan was subject to a re-negotiation which came about due to Defendants' default on their obligations, and this re-negotiation resulted in a novation of the loans and subsequent execution of new loan documents. Plaintiff claims this is evidenced in the fact that the parties did not subscribe a Stipulation, Forbearance or Settlement Agreement for repayment of the PAC loan, and further, none

of the new documents signed reference the new loan as a payment plan, modification or extension of the PAC loan. Instead, the parties signed a new "Term Promissory Note", a new "Mortgage Note", a new "Mortgage Deed" and a new "Pledge and Security Agreement", for a different amount, under different terms, with a different interest rate, and with different pledged collateral than the PAC loan. Additionally, a new party also appeared in the agreement and executed a mortgage note and deed, to wit, the owner of the mortgaged property, Plaza Santa Isabel, without making any reference to or assuming any responsibility regarding the PAC loan. Additionally, PDSI Inc., the corporate guarantor for the original PAC loan, and Productos Avícolas del Caribe and Productos Avícolas del Sur, that had signed the general release for the PAC loan, were noticeably absent from this transaction.

Finally, Plaintiff alleges that no amounts are currently due under the PAC loan, which is evidenced by the fact that FirstBank has not tried to collect on that loan in spite of Defendants' default since 2015. Rather, the PAC loan obligations were extinguished by the subsequent novation (known under Puerto Rico law as "extinctive novation", 31 P.R. Laws Ann. tit. 31, § 3242) and a new obligation was created via the new documents signed. Thus, this new loan relationship was underwritten, closed, and booked as new loan by FirstBank, was sold as such to PR Triangle under the terms of a Loan and REO Purchase Agreement on March 25, 2015 and, thereafter, assigned to Plaintiff Condado 2 on February 10, 2016.

As a result thereof, Plaintiff avers the requirements for the extinguishment of a litigated credit are not met. First, the two (2) obligations are radically different. The PAC loan therefore cannot be considered litigated credit because no payment under that loan

has been demanded. Second, because Defendants had notice of the assignment prior to December 7, 2017, the notice sent was untimely. The Court agrees with Plaintiff.

As previously stated, Article 1425 requires, among others, that the debtor make use of this right within nine (9) days, counted from the date payment is demanded. Yet, assuming (without deciding) for argument's sake that Defendants are correct, that the PAC loan is the main document for the underlying obligation and the subsequent agreement was merely an accessory to the PAC loan, the date to exercise the rights under Article 1425 has lapsed.

Plaintiff has established that on April 3, 2017, as part of the discovery proceedings, it provided to Defendants a true and exact copy of the $1,500,000.00 Term Promissory Note for the PAC loan, which was duly endorsed in its favor. (Docket No. 83, Exhibit E). This document, of course, was later the basis for the subsequent $1,000,000.00 obligation. At that time, Defendants also received copies of the other loan documents related to the PAC loan in Plaintiff's possession.

Defendants proffer that it was not until December 7, 2017 that the Condado 2 representative " first acknowledged" that it acquired the PAC loan after "March 24, 2017", implying that December 7 is the date when payment was "demanded" because they sent notice within the nine (9) day period after that, on December 14. Assuming this was the "demand" the law requires, the "Allonge" accompanying the Promissory Note plainly evidences the assignment to Condado 2, and this document was received by Defendants' counsel on *April 3, 2017*, over six months before they now claim to have acquired the information. (Docket No. 83, Exhibit E). The fact that a Condado 2 representative may

have admitted in December, 2017 that it acquired the loan after the Complaint's date [3] is a different matter altogether which is not before the Court now, and which has no bearing on when Defendants acquired knowledge of the assignment in question. The April 3, 2017 date is clearly shown in the email received by Defendants' counsel. Consequently, Defendants had nine (9) days from April 3, that is, until April 12, 2017, to send Plaintiff their notice of intent to extinguish the litigated credit. The notice sent in December was untimely and, therefore, failed to comply with the statutory requirement.

For these reasons, the Court finds Defendants have failed to comply with the requirements to extinguish the litigated credit. Accordingly, Defendants' "Motion to Extinguish The Litigated Credit Pursuant to Article 1425 of the Puerto Rico Civil Code" is DENIED. (Docket No. 74).

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 15th day of June, 2018.

                                               S/CAMILLE L. VELEZ-RIVE
                                               CAMILLE L. VELEZ RIVE
                                               UNITED STATES MAGISTRATE JUDGE

---

[3] Which in any event, has been alleged in Defendants' motion but not evidenced by the deposition testimony submitted in support thereof.